Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7909 | **DATE** | 5/3/2001 |
| **CASE TITLE** | Christina Smith, et al vs. BOC Group PLC, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Motion to dismiss (Doc. No. 3-1, 4-1, 7-1) granted in part and denied in part. Answer to be filed within twenty-one (21) days. Ruling date of 5/9/01 stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 4 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 04 2001 | 17 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING | 5/3/2001 | |
| | | MAY -3 PM 3:31 | date mailed notice | |
| ETV | courtroom deputy's initials | | ETV | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

DOCKETED
MAY 0 4 2001

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTINIA SMITH, JOHN NEAL and MAURICE WALKER, <br><br> Plaintiffs, <br><br> v. <br><br> BOC GROUP PLC; BOC GASES; AMERICAN STERILIZER COMPANY; PENNSYLVANIE ENGINEERING COMPANY; STERIS CORPORATION; and AGA GAS, INC., <br><br> Defendants. | No. 00 C 7909 <br><br> Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

In this products liability action, three hospital workers claim they were harmed by exposure to chemicals used to sterilize medical equipment. Plaintiffs Christinia Smith, John Neal and Maurice Walker have brought this case against six defendants involved in the manufacture, sale, promotion, marketing, and distribution of chemical sterilization products, including ethylene oxide ("EtO"). Named as Defendants are BOC Group PLC, BOC Gases ("BOC Gases") (a division of BOC Group PLC) (*see* Counts 1-4 of Plaintiffs' Complaint), American Sterilizer Company ("AMSCO") (*see* Counts 5-8), Pennsylvania Engineering Company (*see* Counts 9-12), Steris Corporation (*see* Counts 13-16), and AGA Gas, Inc. (*see* Counts 17-20). Plaintiffs claim these Defendants are liable under a variety of theories, including: negligence, strict liability, breach of express and implied warranties, and civil conspiracy to defraud. Defendants BOC Group PLC, BOC Gases, American Sterilizer

Company, Steris Corporation, and AGA Gas, Inc., have moved to dismiss each of the four counts as against them, pursuant to Rules 12(b)(6), 9(b), and 10 of the Federal Rules of Civil Procedure. For the following reasons, the court grants Defendants' motions in part and denies them in part.

## FACTUAL BACKGROUND

As noted, Defendants are each corporations that manufactured, sold, promoted, marketed, and distributed chemical products, including EtO. (Complaint Count 1, ¶ 1, Count 5, ¶ 1, Count 9, ¶ 1, Count 13, ¶ 1, Count 17, ¶ 1.) Defendants then supplied these products to medical service providers, including Ingalls Hospital in Harvey, Illinois ("Ingalls"), for use by its employees. (*Id.* Count 1, ¶ 2.) Plaintiffs were each employed as Central Processing Department technicians at Ingalls–Plaintiff Smith worked at Ingalls from 1990-2000, Plaintiff Neal worked there from 1992-2000, and Plaintiff Walker worked there from 1997-2000. (*Id.* Count 1, ¶ 4.) During this employment, Plaintiffs allege that they were exposed through inhalation, ingestion and dermal contact to Defendants' products on a continual basis. (*Id.*) This exposure caused Plaintiffs to develop impaired cognitive abilities, psychological effects, immune system dysfunction, metabolic disease, increased risk of carcinogenic, teratogenic, and mutagenic effects, and other adverse health effects. (*Id.* Count 1, ¶ 5.) Moreover, Plaintiffs did not know, nor should they reasonably have known, that any injury was caused by Defendants' products until conversations with their physicians in August 2000. (*Id.* Count 1, ¶ 9.)

On September 5, 2000, Plaintiffs filed a twenty-count complaint in the Circuit Court

of Cook County, Illinois alleging four claims against five of the six named Defendants.[1] On December 18, 2000, Defendants American Sterilizer Company and Steris Corporation removed Plaintiffs' action to federal court pursuant to 28 U.S.C. § 1446. On December 26, 2000, Defendants BOC Group PLC, BOC Gases, American Sterilizer Company and Steris Corporation filed motions to dismiss each count of Plaintiffs' complaint as against them. On January 17, 2001, Defendant AGA Gas, Inc. also moved to dismiss each count of Plaintiffs' complaint as against it.

The court, here, details each of Plaintiffs' four claims (which are essentially the same as to each Defendant) and Defendants' arguments as to why such claims should be dismissed:[2]

*Negligence (Counts 1, 5, 9, 13, and 17)*

Plaintiffs allege, first, that Defendants had a duty to use every reasonable precaution to prevent injury to Plaintiffs, but (a) negligently designed the products and rejected or failed to consider safer alternatives; (b) negligently marketed and sold the products, resulting in adverse health effects during routine use; (c) negligently marketed and sold ultrahazardous

---

[1] The court notes that, while Plaintiff included Defendant BOC Gases in the case caption, none of the Complaint's 20 counts appear directed at Defendant BOC Gases. In fact, throughout Counts 1 through 4 (which are the only counts that could arguably cover BOC Gases), Plaintiffs continually use the singular "defendant," referring to BOC Group PLC. Moreover, in Paragraph 7 of Count 4, Plaintiffs state that "in breach of the duties as aforesaid, the defendants BOC GROUP PLC, AMERICAN STERILIZER COMPANY, STERIS CORPORATION, PENNSYLVANIA ENGINEERING COMPANY and AGA GAS INC. conspired together . . . ." Noticeably, Plaintiffs do not include BOC Gases in this allegation.

[2] The court does not find it necessary in this summary to identify which particular Defendant(s) proffered which argument because the success of any one argument will cause the court to dismiss the corresponding claim as to all Defendants.

3

products; (d) negligently marketed and sold products that caused Plaintiffs to have symptoms and effects of neurotoxicity, immune system dysfunction, metabolic disorder, increased risk of carcinogenic, teratogenic, and mutagenic effects and other illnesses; (e) negligently manufactured, formulated, or packaged the products; (f) knew or should have known that the use of the products would allow hazardous levels of EtO to be released into workers' breathing zone, and knew or should have known that injury would occur, yet continued to manufacture, sell, promote, market, and distribute the products; (g) failed to recall and/or negligently continued to manufacture, sell, promote, market, and distribute the products despite having actual and implied knowledge that users could not safely control the products; and (h) failed to warn users of the hazards of the products. (Complaint Count 1, ¶ 6.) Plaintiffs allege that their injuries, already described above, were a direct and proximate result of Defendants' negligence. (*Id.* ¶ 10.)

Defendants raise three arguments as to why Plaintiffs' negligence claim should be dismissed: (1) there can be no duty, a requisite element of any negligence claim, because Plaintiffs have failed to identify the particular product that allegedly caused damage to Plaintiffs; (2) Plaintiffs merely alleged conclusions of law, such as "Defendant negligently designed the products or rejected or failed to consider safer alternatives;" and, (3) specifically with regard to the failure to warn and recall allegations, no duties to warn or recall exist for dangers that were not known, nor should have been known, at the time the relevant products left their control.

4

*Strict Product Liability (Counts 2, 6, 10, 14, and 18)*

Plaintiffs allege that, at the time the products in question left the possession of Defendants, and on a continuing basis thereafter, Defendants had a duty to deliver products that were reasonably safe, yet breached this duty by delivering products that were unreasonably dangerous. (Complaint Count 2, ¶ 6.) According to Plaintiffs, Defendants had the ability to change the products so that the danger of injury would be eliminated without impairing the administration and efficiency of sterilization. (*Id.* ¶ 7.) As a direct and proximate result of the defective condition of these products, Plaintiffs suffered the injuries already discussed above. (*Id.* ¶ 8.)

Defendants argue that the strict liability claim, like the negligence claim, must be dismissed because Plaintiffs have failed to identify the particular product that allegedly caused Plaintiffs' injuries.

*Breach of Warranty (Counts 3, 7, 11, 15, and 19)*

As their third claim, Plaintiffs allege that Defendants made express and implied affirmations of fact and promises to users in labels, packaging, manuals, instructions, and distributor information which stated that their EtO products were safe and did not cause neurological, immunological or metabolic disease or increased risk of cancer or mutagenic effects in humans. (Complaint Count 3, ¶ 6.) Defendants, Plaintiffs further allege, also implied by their actions that their products met (a) a warranty of merchantability that defects would not occur within ordinary and expected use (*Id.* ¶ 9), and (b) a warranty of fitness for a particular purpose–the sterilization of medical items. (*Id.* ¶ 10.) According to Plaintiffs,

5

these warranties extended to them because the Plaintiffs' safety was explicitly or implicitly a basis of the bargain between Defendants and Ingalls, Plaintiffs' employer. (*Id.* ¶ 7.) Defendants then had a duty to comply with the terms of these warranties and fulfill their promise that the products would not cause injury, yet breached that duty. (*Id.* ¶ 12.) Plaintiffs, without specifying how, claim to have provided timely notice of the alleged defects to Defendants. (*Id.* ¶ 8.)

Defendants raise three arguments as to why the breach of warranty claims should be dismissed: (1) Plaintiffs violated Rule 10 of the Federal Rules of Civil Procedure by not alleging their three warranty claims (express; implied warranty of merchantability; implied warranty of fitness for a particular purpose) in separate counts; (2) Plaintiffs did not give proper notice to Defendants, an essential element of any warranty claim, because they failed, and still fail, to identify the particular product at issue; and (3) Plaintiffs have failed to state an express warranty claim because they did not include in or attach to their Complaint the terms of any such warranty.

*Conspiracy to Defraud (Counts 4, 8, 12, 16, and 20)*

Although they have asserted no independent fraud claim, Plaintiffs' Complaint includes several allegations that Defendants fraudulently concealed the health hazards associated with their products from state and federal agencies, the academic and scientific communities, as well as the general public. (Complaint Count 1, ¶ 11, Count 3, ¶ 14, Count 4, ¶ 6.) This allegedly fraudulent conduct is the underlying basis for Plaintiffs' civil conspiracy claim. Plaintiffs allege that Defendants conspired together and engaged in a

6

common scheme to perpetrate such fraud in the following manner: (a) from 1966-1998, Defendants concealed and misstated EtO's neurotoxicity; (b) from 1972-2000, Defendants withheld and distorted information on EtO's neurotoxicity in submissions under § 313 of Title III of the Superfund Amendments, as well as submissions to the EPA, OSHA, and other state and federal agencies; (c) from 1970-2000, Defendants thwarted industry safety standards; and (d) from 1972-2000, Defendants designed and promulgated material safety data sheets, labels and packaging that concealed and misstated the neurotoxicity of EtO. Plaintiffs allege that their injuries, already described above, were a direct and proximate result of Defendants' conspiracy to defraud. (*Id.*, Count 4, ¶ 7(A)-(F).)

Defendants argue that Plaintiffs' civil conspiracy claim should be dismissed for two reasons: (1) Plaintiffs, in violation of Rule 9(b) of the Federal Rules of Civil Procedure, have not alleged with specific facts either an agreement among Defendants or a tortious act committed in furtherance of any such agreement; and (2) even if Plaintiffs have successfully alleged a tortious act, the conduct alleged was merely parallel, which is not sufficient to state a conspiracy claim.

## DISCUSSION

In deciding a motion to dismiss for failure to state a claim, the court considers the allegations in the complaint to be true and views all well-pleaded facts and any reasonable inferences drawn from the facts in the light most favorable to the plaintiff. *See Leatherman v. Tarrant County Narcotics & Intelligence Unit*, 507 U.S. 163, 164-65 (1993); *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000). Dismissal is proper under 12(b)(6) if

the Plaintiff can establish no set of facts upon which relief can be granted. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

A.   BOC Gases

The court finds that, while it may have been mere oversight, Plaintiffs have not adequately directed any count of its Complaint against Defendant BOC Gases. BOC Gases' motion to dismiss is granted.

B.   Negligence

Defendants ask this court to dismiss Plaintiffs' negligence claim in entirety. Their primary argument is that Plaintiffs have failed to identify the particular product at issue, and, instead, have merely alleged that they were injured by "chemical products including ethylene oxide and other product components" formulated, manufactured, sold, promoted, marketed, lectured and distributed by Defendants.

The only arguably relevant federal case[3] Defendants cite in support of this argument is *Shine v. Owens-Illinois, Inc.*, 979 F.2d 93, 97 (7th Cir. 1992). *Shine* involved a widow's claim against manufacturers and distributors of asbestos to recover damages for the death of her husband. The Seventh Circuit noted that in order to recover, under Illinois law, a plaintiff "must identify the allegedly harmful product and demonstrate a link between that product

---

[3]   Because Illinois law governs this diversity action, Defendants also cite Illinois cases such as *Carrizales v. Rheem Mfg. Co.*, 226 Ill. App. 3d 20, 24, 589 N.E.2d 569, 572 (1st Dist. 1991). Such cases are inapposite at this stage, however, because Illinois state courts require fact pleading, while federal courts only require notice pleading, a considerably more lenient standard. *See Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997).

8

and each defendant." *Shine*, 979 F.2d at 97. The court then affirmed a grant of *summary judgment* to the defendant in part because the plaintiff did not "specifically identify the asbestos product to which her husband allegedly was exposed." *Id.*

Shine, where the court affirmed summary judgment, is readily distinguishable from this case, where Defendants seek dismissal under Rule 12(b)(6). Recognizing that Plaintiffs' allegations are relatively vague, the court nevertheless assumes that Defendants are sufficiently familiar with their own product lines to answer. Plaintiffs' failure to provide specifics is unfortunate and no doubt frustrating for Defendants, but the court finds itself able to comprehend the thrust of Plaintiffs' claim, and therefore concludes that Plaintiffs have met the threshold necessary to survive Defendants' motion. *See Kyle v. Morton High Sch.*, 144 F.3d 448, 455 (7th Cir. 1998) (requiring only that "sufficient facts [have been] pleaded to allow the district court to understand the gravamen of the plaintiff's complaint.") (quoting *Doherty v. City of Chicago*, 75 F.3d 318, 326 (7th Cir. 1996)).[4] Defendants' motion to dismiss the negligence claim in its entirety is denied.

In one respect, however, the court agrees with Defendants that Plaintiffs' allegations are inadequate. Specifically, Plaintiffs assert that Defendants acted negligently in failing to warn Plaintiffs of the dangers associated with their products and failing to recall these

---

[4] Defendants may have been better served in their quest for specificity by filing a Rule 12(e) motion for a more definite statement as opposed to a motion to dismiss. At this time, however, it would be more appropriate for Defendants to seek such information through the discovery devices made available in Rules 26 through 36.

products. Illinois law is clear: (1) "the law does not contemplate placing the onerous duty on manufacturers to subsequently warn all foreseeable users of products based on increased design or manufacture expertise that was not present at the time the product left its control," *Modelski v. Navistar Int'l Trans. Corp.*, 302 Ill. App. 3d 879, 888 707 N.E.2d 239, 246 (1st Dist. 1999) and, (2) "absent a statutory obligation or voluntary undertaking to retrofit, no Illinois case has imposed upon a manufacturer a duty to retrofit or recall where the allegedly dangerous condition was not discovered until after the product was sold." *Rogers v. Clark Equip. Co.*, 318 Ill. App. 3d 1128, 744 N.E.2d 364, 370 (2d Dist. 2001) (citing *Modelski*, 302 Ill. App. 3d at 889, 707 N.E.2d 239 (1st Dist. 1999)). Plaintiffs' complaint alleges that Defendants knew or should have known the danger of its product prior to sale. If Defendants did know or should have known of any such danger, they may very well be found liable for their failure to warn or recall. As to any condition discovered after the product was sold, however, Defendants had no such duty. The court therefore dismisses Plaintiffs' negligence claim only insofar as it is predicated on a duty to warn or recall a product after learning of its defect post-sale.

C. **Strict Liability**

To state a strict liability claim, a plaintiff must plead three elements: (1) the injury resulted from a condition of the product; (2) the condition was unreasonably dangerous; and (3) the condition existed at the time the product left the manufacturer's control. *See Hansen v. Baxter Healthcare Corp.*, 309 Ill. App. 3d 869, 880, 723 N.E.2d 302, 311 (1st Dist. 1999). Plaintiffs have alleged that, at the time of manufacture, Defendants' EtO products were

10

unreasonably dangerous for use in hospitals by humans, and that as a direct and proximate result of this defective condition, Plaintiffs suffered injury. Defendants argue in response that the claim must be dismissed because Plaintiffs have failed to identify the particular EtO product that was allegedly defective and injurious. Again, in light of the aforementioned lenient pleading standard of the federal rules, the court rejects Plaintiffs' argument.

D. Breach of Warranty

Neither is the court swayed by Defendants' responses to Plaintiffs' breach of warranty claims. Plaintiffs have brought, all in one count, three warranty claims: breach of express warranty; breach of an implied warranty of merchantability; and breach of the implied warranty of fitness for a particular purpose. Citing *Ridle v. Sprayrite Mfg. Co.*, 198 Ill. App. 3d 597, 599, 555 N.E.2d 1272, 1272-73 (3d Dist. 1990), Defendants contend that grouping all three warranty claims together in one count violates Rule 10 of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 10(b) ("Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth."). The court finds Defendants' citation to *Ridle* unconvincing. First of all, *Ridle* was an Illinois and not a federal case, so Rule 10 did not even come into play. Second, while the *Ridle* court notes that the plaintiffs filed their three warranty claims in three separate counts, nowhere in the opinion does the court indicate that pleading in such a manner was required.

Defendants' second argument for dismissal of the warranty claims is no stronger. Defendants claim that Plaintiffs did not give them satisfactory notice of breach as required

11

by Illinois statute because Plaintiffs did not, and have still not, specified the particular product at issue. According to § 2-607 of the Uniform Commercial Code, codified in Illinois as 810 ILCS 5/2-607(3)(a), an essential element of a warranty claim is notice of breach to the seller. *See Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 491, 675 N.E.2d 584, 589 (1996) ("Section 2-607 of the UCC mandates that a 'buyer'[5] must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.'"). While they do not describe how, Plaintiffs nevertheless explicitly allege that they "gave timely notice of the alleged defects to the defendant." Complaint, Count 3, ¶ 8. Again, specificity as to the particular product may well have clarified any such notice, but the court will not dismiss the warranty claim on this account.

Defendants' third and final argument also fails. Defendants ask the court to dismiss Plaintiffs' express warranty claim because "the terms of the express warranty must be stated or attached to the complaint . . . and failure to do so renders the claim invalid." *Board of Educ. of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428, 461, 546 N.E.2d 580, 595 (1989). In their complaint, though, Plaintiffs do recite the terms of the alleged warranty: "Defendants made

---

[5] Despite the fact that they are not "buyers" of Defendants' EtO products, Plaintiffs are still able to state a cause of action for breach of warranty because they have alleged that their safety was either explicitly or implicitly a basis for the bargain between Defendants and Ingalls, Plaintiffs' employer. *See Maldonado v. Creative Woodworking Concepts, Inc.*, 296 Ill. App. 3d 935, 938, 694 N.E.2d 1021, 1024 (3d Dist. 1999) ("[A] warranty may also 'extend to any employee of a purchaser who is injured in the use of the goods, as long as the safety of that employee in the use of the goods was either explicitly or implicitly part of the basis of the bargain when the employer purchased the goods.") (quoting *Whitaker v. Lian Feng Mach. Co.*, 156 Ill. App. 3d 316, 321, 509 N.E.2d 591, 595 (1st Dist. 1987)).

express and implied affirmations of fact and promises to the buyer and users, including plaintiffs, the language of which . . . stated that *the aforementioned products were safe and did not cause neurological, immunological or metabolic disease or increased risk of cancer or mutagenic effects in humans, including the plaintiffs.*" Complaint, Count 3, ¶ 6 (emphasis added). The court assumes, as it must on this motion, that these are the "terms" of the warranty, and therefore, rejects Defendants' argument.

E.   **Conspiracy to Defraud**

Defendants' arguments for the dismissal of Plaintiffs' conspiracy claim, on the other hand, are more powerful. In order to properly allege a civil conspiracy, a plaintiff must plead: (1) a combination of two or more persons; (2) for the purpose of accomplishing by some concerted action; (3) either an unlawful purpose or a lawful purpose by unlawful means. *Rose v. Mony Life Ins. Co.*, No. 99 C 4279, 2001 WL 214200, at *5 (N.D. Ill. Mar. 2, 2001) (citing *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 62, 645 N.E.2d 888, 894 (1994)). In addition, courts in this Circuit have required that a conspiracy to defraud must be pleaded with particularity under Federal Rule of Civil Procedure 9(b). *See Flynn v. Merrick*, 881 F.2d 446, 449 (7th Cir. 1989); *see also Eisenhauer v. Stern*, No. 99 C 6422, 2000 WL 136011, at *2 (N.D. Ill. Jan. 27, 2000) ("[W]henever fraud constitutes the gravamen of a claim . . . Rule 9(b) expressly requires that the circumstances constituting fraud . . . shall be stated with particularity. . . [;] simply mouthing conclusory assertions of 'conspiracy' in the context of an asserted fraud will not suffice."). Defendants claim that Plaintiffs have not pleaded their conspiracy claim with the requisite specificity. The court agrees.

13

To be sure, Plaintiffs have satisfactorily alleged underlying tortious acts: fraudulent statements (including omissions) to state and federal agencies as well as the general public.[6] Where Plaintiffs falter is in their allegations of an agreement. Plaintiffs have merely alleged that Defendants "conspired together" to, among other things, conceal and misstate the dangers of their EtO products. They have not, however, stated with any particularity the basis or mechanics of any such agreement among Defendants. While the court is willing to allow the other claims to go forward absent such particularity, the conspiracy claim is subject to the heightened pleading standard of Rule 9(b). The conspiracy allegations here do not meet that standard. Because the court dismisses Plaintiffs' conspiracy claim on particularity grounds, it need not reach Defendants' parallel conduct argument.

## CONCLUSION

For the foregoing reasons, the court grants (i) BOC Gases' motion to dismiss, and, as to each remaining Defendant, grants the motion to dismiss (ii) the civil conspiracy claim against it; and (iii) the negligence claim against it only insofar as it is predicated on a duty to warn or recall a product after learning of its defect post-sale. The court denies the remainder of Defendants' motions. (Docs. 3-1, 4-1, 7-1.)

ENTER:

Dated: May 3, 2001

REBECCA R. PALLMEYER
United States District Judge

---

[6] As noted in the Factual Background, though, Plaintiffs have not set forth a separate claim of fraud.

14